# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SERVICIOS ESPECIALES AL COMERCIO
EXTERIOR,

        Plaintiff,

v.

Case No. 08-CV-1117

JOHNSON CONTROLS, INC.,

        Defendant.

## ORDER

On January 28, 2011, defendant Johnson Controls, Inc. ("JCI") filed a Motion for Partial Summary Judgment (Docket #75). In that motion, JCI requests the court grant it summary judgment as to 309 of 324 allegedly unpaid invoices at issue, as well as on plaintiff Servicios Especiales al Comercio Exterior's ("Servicios") claim of tortious interference. The court grants in part and denies in part the motion.

## BACKGROUND

Except where noted, the following facts are undisputed. This case arises from a contractual dispute between Servicios, a Mexican corporation, and Johnson Controls Automotive Mexico S.A. de C.V. ("JCAM"), another Mexican corporation that is a subsidiary of JCI. (Def.'s Statement of Fact [hereinafter Def.'s SoF] ¶¶ 1-2, 11) (Docket #77). JCAM is not a party to this suit. Instead, Servicios brought suit against JCI because it is JCAM's ultimate parent and was also involved with the dispute at issue to some degree. (*See* Pl.'s Statement of Fact [hereinafter Pl.'s SoF] ¶ 5) (Docket #85). JCAM manufactures automobile seats and interiors. (Def.'s SoF

at ¶ 10). For purposes of this motion, the parties agree that Servicios and JCAM have had an oral contract since 1994 in which Servicios provided customs services to JCAM related to JCAM's foreign trade operations, including clearing imported raw materials through the Mexican border.[1] (*Id.* at ¶¶ 14-21). As part of the contractual arrangement, Servicios would invoice JCAM for services, after which JCAM would deposit payment into an account specified by Servicios.[2] (*Id.* at ¶ 21). A major point of dispute, however, exists as to the method and circumstances surrounding payment.

In 2002, JCAM notified Servicios that Servicios had failed to reimburse JCAM approximately three million pesos. (Pl.'s SoF ¶ 30). Subsequent to this notification, Servicios reviewed its records and determined that it was JCAM, in fact, that owed money, in the amount of approximately eight million pesos. (*Id.* at ¶ 31). In 2004, Servicios communicated in some fashion to JCAM that it was claiming the eight million pesos be paid.[3] (*Id.* at ¶ 32-33). After reviewing Servicios' information and its own records, JCAM denied any failure to pay invoices. (Def.'s SoF ¶ 23). Then, around August 2006, after Servicios and JCAM were unable to resolve the dispute,

---

[1] The parties' statements of fact and briefing describe in further detail the various iterations of Servicios and JCAM, but ultimately agree that the oral contract has continued in force the entire time. For simplicity, the court refers only to Servicios and JCAM.

[2] In Servicios' response to JCI's statement of fact, it asserts that beginning in 2002 JCAM instructed Servicios to send invoices to FTS Industries, Inc. in the United States after which funds were deposited into the account. Regardless of dispute, that fact is not material to the decision.

[3] Here, JCI appears to dispute that this communication establishes a demand for payment. (*See* Def.'s Reply to Pl.'s SoF ¶ 33) (Docket #95). However, that merely illustrates that there is indeed a factual dispute. The materiality and genuineness are discussed later.

Servicios attempted to meet with JCI about the issue, but that meeting never occurred. (*Id.* at ¶¶ 24-25). Instead, the Hispanic Chamber of Commerce of Wisconsin ("Chamber of Commerce") contacted a number of individuals at JCI on behalf of Servicios. (Pl.'s SoF ¶¶ 40-41). Ultimately, JCI referred the matter back to Jorge Muller ("Muller"), an employee at JCAM. (*Id.* at ¶ 43). Finally, on November 22, 2006, Servicios sent a letter to JCAM listing the allegedly unpaid invoices, including a four-column table indicating the date of invoice, invoice number, Servicios' internal reference number, and the amount of the invoice. (Def.'s SoF ¶¶ 26-30). The letter listed 324 unpaid invoices, all dated between February 23, 2000, and December 31, 2002. (*Id.* at ¶ 31). Fifteen of the invoices were dated December 31, 2002. (*Id.* at ¶ 32). The next most recent invoice is from September 2002. (Johnson Decl. Ex. D) (Docket #78-4). In May 2008, Servicios brought suit against JCAM's successor in Mexico. (Def.'s SoF ¶ 38). On December 23, 2008, Servicios brought suit in this court against JCI.

## ANALYSIS

Consistent with the analysis that follows, the court will grant in part and deny in part the motion, granting JCI judgment on Servicios' claim for tortious interference. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those

under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In other words, in determining whether a genuine issue of material fact exists, the court must construe all inferences in favor of the non-movant. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983). However, where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," there is no genuine dispute as to any material fact because a complete failure of proof "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

In its motion for partial summary judgment, JCI argues that Servicios' claims as to all but fifteen unpaid invoices are barred by the applicable statute of limitations, and that the claim of tortious interference is improperly pled, not supported by sufficient evidence, and subject to a defense of privilege. However, a genuine dispute remains as to the actual accrual of the contract claims, thus summary judgment is inappropriate on that issue. On the other hand, the court finds that Servicios is not entitled to equitable estoppel should the statute of limitations ultimately apply. As to the claim for tortious interference, Servicios has failed to offer sufficient admissible evidence, thus the court will grant JCI's motion on that claim.

**I.    STATUTE OF LIMITATIONS**

The court finds a genuine dispute remains regarding the statute of limitations defense, but also finds that, should it apply, Servicios is not entitled to equitable

estoppel. In Wisconsin, an action upon a contract must "be commenced within 6 years after the cause of action accrues or be barred." Wis. Stat. § 893.43. The six-year limitation period is also applicable to claims for breach of the duty of good faith and fair dealing as well as claims of unjust enrichment. *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 966 (7th Cir. 2000) (noting breach of duty of good faith is same as breaching a contract term in Wisconsin); *Boldt v. State*, 305 N.W.2d 133, 141 (Wis. 1981) (Unjust enrichment claim is quasi-contractual and six-year limitation period applies). Furthermore, a contractual cause of action accrues immediately upon breach, not upon "discovery," as may be the case in tort. *CLL Assocs. Ltd. P'ship v. Arrowhead Pac. Corp.*, 497 N.W.2d 115, 116 (Wis. 1993). Thus, for the limitation period to begin running, there must be "a claim capable of present enforcement." *Les Moise, Inc. v. Rossignol Ski Co.*, 361 N.W.2d 653, 656 (Wis. 1985).

Servicios has alleged sixteen causes of action: breach of contract; breach of duty of good faith and fair dealing; unjust enrichment; as well as joint venture, joint enterprise, actual or implied agency, and apparent agency forms of the preceding. The last is a claim for tortious interference with a contract. Thus, the first fifteen counts are actions upon a contract and, therefore, the statute of limitations applies. Servicios argues that the limitations period did not begin to run until 2004, or that there is at least a genuine dispute as to when the period did begin to run. Alternatively, it argues that equitable estoppel bars application of the statute of limitations here.

## A. Commencement of the Limitation Period

JCI argues that one of the terms of the oral contract required JCAM to pay Servicios within fifteen days of the date of any given invoice. In response, Servicios asserts that the fifteen-day period was merely a hope, not a solid term, and that the payment was instead due upon demand. Clearly, the parties dispute the fact of when the oral contract required payment. It is also clear that such a fact is material to the decision, as it determines the precise moment of breach and thus the contract claims' accrual. If JCI is correct, then breach occurred for each unpaid invoice upon the sixteenth day after it was dated. On the other hand, if payment was not due until demanded, the period may not have begun until 2004. But the question remains as to whether the dispute is genuine.

JCI offers the fact that Francisco David King Cancino ("King"), CEO of Servicios and the person asserted as most knowledgeable concerning the facts,[4] stated at his deposition that JCAM was to make payment within fifteen days of receiving an invoice. (King Dep. 20:3-8) (Johnson Decl. Ex. A) (Docket #78-1). His relevant testimony is as follows:

> Q. What about the payment terms? How was [JCAM] to be paid – Excuse me. How was [JCAM] to pay [Servicios] for the services provided?
> A. I think it was 15 day term, 15 days from receipt of the invoice or what we call the expense sheet.
> . . .

---

[4]Servicios states that this is not entirely accurate because King was only offered as a person having dealt with all of the people involved. (Pl.'s Resp. to Def.'s SoF ¶ 6) (Docket #86). As discussed later, Servicios asserts that Alfredo Dominguez also has knowledge of the facts and circumstances at issue. (*Id.*).

-6-

> Q. I see. And this particular invoice, this is dated what – September 29, 1998. Is that right?
> A. That's right.
> Q. So this would have – So you would have sent this on or around that date to JCAM. Is that right?
> A. Well, after that date.
> Q. Okay. Fair enough. You wouldn't have sent it 10 years after that, you would have sent it like a few days after September 29th, 1998. Am I right?
> A. That's right.
> Q. And then JCAM would have had 15 days to deposit money into your account?
> A. Well, they should have had 15 days to do it, but they didn't do it.
> Q. Under the oral contract they had 15 days?
> A. That's right.
>
> . . .
>
> Q. So if we look at the first invoice which is dated – first invoice listed which is dated February 23, 200[0], do you see that one?
> A. Yes.
> Q. That – under the terms of the oral contract, that should have been paid 15 days after the 23rd of February, 2000; is that correct?
> A. Exactly.
> Q. If we look – I'm just going to go randomly – if we look at page SECE0749, the top of the page lists an invoice that was sent on April 11, 2002. Do you see that?
> A. Yes.
> Q. And that invoice would have been due 15 days after the 11th of April, 2002; is that correct?
> A. That's right.

(King Dep. 20:3-8, 41:21-42:14, 104:12-105:2). By way of setting up that testimony, however, King testified that it was his father who entered into the original oral agreement in 1994 and that he was not present. (King Dep. 17:14-18:15). In turn, declarations offered by Servicios to oppose this motion assert that the fifteen-day payment window was merely a "standing request," not a specific contractual term. (King Decl. ¶ 7) (Docket #83); (Rodriguez Decl. ¶¶ 7-9) (Docket #84). The second

declaration is from Alfredo de Jesus Dominguez Rodriguez ("Rodriguez"), a Certified Public Accountant, working with Servicios since 2000, who asserts that he has personal knowledge of the oral agreement between Servicios and JCAM. (Rodriguez Decl. ¶¶ 1-2, 4). Specifically, King explains his responses during his deposition as consistent with a hope that JCAM would pay invoices within fifteen days, pointing to his use of the word "should" in describing JCAM's payment duties. (King Decl. ¶ 8). Moreover, King asserts that between 2000 and 2006, Servicios issued some 80 to 100 invoices per month to JCAM, "numerous" of which were not paid until forty-five days later, rather than fifteen. (King Decl. ¶ 7). Both King and Rodriguez state that any time an invoice was paid outside the fifteen-day window, no fees or interest were assessed for failure to pay within fifteen days. (King Decl. ¶ 7); (Rodriguez Decl. ¶ 9). Further, Rodriguez asserts that during his own March 11, 2010 deposition, he was asked to identify the terms of the oral contract and did not identify a 15-day payment term. (Rodriguez Decl. ¶ 7).

JCI argues that these submissions run afoul of the "sham affidavit" rule in that they contradict King's testimony. The sham affidavit rule prevents a party from avoiding summary judgment by submitting declarations or affidavits that contradict prior testimony. *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996). That being the basic rule, there is further nuance, bearing in mind that the rule should be applied "with great caution." *Id.* at 1169. The court first notes that the classic application of the rule concerns only the contradiction of prior testimony by a later affidavit from *the same speaker*. *See id.* at 1168 ("Were the

conflict at issue between statements given by two separate individuals, summary judgment would be inappropriate . . . .  The situation is quite different, however, when a witness has contradicted directly his or her own earlier statements"); *see also Miller v. Ameritech Corp.*, 214 Fed. App'x 605, 608 (7th Cir. 2007) (when a party's later affidavit contradicts their *own* testimony, that affidavit is to be disregarded); *Delman-Tremblay v. Jewel Companies, Inc.*, 859 F.2d 517, 521 (7th Cir. 1988) (purpose of summary judgment served by rule preventing party from creating issues through witness contradicting "his own" testimony).  As the Seventh Circuit illustrated, citing to a prior case, other evidence "need not explain why [*it*] contradicted the [plaintiff's] remarks." 75 F.3d at 1171.  Second, even where the rule applies, contradictory affidavits may be permissible to "clarify ambiguous or confusing testimony" or when based upon new evidence.  *Id.* at 1171.  Mistake or lapse in memory may also permit consideration of a contradictory affidavit.  *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 751 (7th Cir. 2010).

Even if the rule applied to also prevent the court from considering Rodriguez's declaration, *see Foster Poultry Farms, Inc. v. SunTrust Bank*, No. CV-F-04-5513, 2007 WL 1113529, at *4 (E.D. Cal. April 13, 2007), there exists an exception here. To begin, King stated at his deposition that he was not the one who entered the contract, and when asked about payment terms, he responded "I think" it was fifteen days.  His admission is not so clearly unequivocal that the court should not only disregard King's later affidavit, but also the affidavit of Rodriguez, who has established personal knowledge and points out that his affidavit does not contradict

his own earlier testimony. Moreover, both King and Rodriguez do not simply deny a fifteen-day payment term, but also offer the fact that invoices were often paid later than fifteen days with no assessed penalties. Based on the content of King's earlier deposition, and in light of the current explanations, coming not just from King, but also from a second party with personal knowledge, the court cannot say that Servicios is merely injecting a sham issue here. Finding no sham issue, the court further finds that a reasonable jury could find in favor of Servicios that a fifteen-day payment window was not a term of the oral contract. As such, the dispute over the payment terms is genuine, and it is also material in that it may determine the date or dates of breach. Therefore, the court will deny JCI's motion as to this issue.

### B. Equitable Estoppel

Though the court is obliged to deny JCI's motion as to the statute of limitations claim, there remains the possibility that a jury could find that the fifteen-day payment window was in fact a term, thus barring recovery on the majority of invoices at issue. As such, the court will also decide the issue of equitable estoppel in the event a jury so finds. In Wisconsin, equitable estoppel may preclude application of the statute of limitations where a defendant engaged in wrongful conduct and the plaintiff relied on that conduct to its detriment. *Policemen's Annuity & Benefit Fund of the City of Milwaukee v. City of Milwaukee*, 2001 WI App 144, ¶ 18, 246 Wis. 2d 196, 630 N.W.2d 236. With regard to reliance, the Supreme Court of Wisconsin has explained that "[t]he aggrieved party must have failed to commence an action within the statutory time period because of his or her reliance on the defendant's

representations or act." *Hester v. Williams*, 345 N.W.2d 426, 431 (Wis. 1984). Moreover, the aggrieved party cannot unreasonably delay in bringing the action after the inducement for delay has ceased. *Id.* Reduced to its essence, the test is "whether the conduct and representations . . . were so unfair and misleading as to outbalance the public's interest in setting a limitation on bringing actions." *Id.*

In *Policemen's Annuity*, police officers became entitled in 1969 to receive "in lieu" contributions from the city to a benefit fund. 2001 WI App 144 at ¶ 2. In 1995, the fund discovered the city had not been making payments. *Id.* at ¶ 4. The city conducted an audit, but limited the audit to the years 1989 to 1995 based on the statute of limitations. *Id.* at ¶ 5. The fund filed for a declaratory judgment that it was entitled to missed payments pre-dating 1989 as well. *Id.* at ¶ 6. The court of appeals found that equitable estoppel prevented application of the statute of limitations, reasoning that failure to make the "in lieu" payments was wrongful and that the fund had relied on the city's promise to make the payments until the 1995 discovery. *Id.* at ¶ 18.

Unfortunately for Servicios, *Policemen's Annuity* is distinguishable from the case at hand. In *Policemen's Annuity*, the wrongful conduct was found to stretch back to the first date of accrual; that is, the fund's first cause of action would have accrued upon a missed payment in 1969.[5] Thus, the city's wrongful conduct constituted the original failure to make the payment, subsequent missed payments,

---

[5] Given that it was an action for declaratory judgment, the court recognizes that there was no finding that any payment was actually missed in 1969. Regardless, that is not relevant to the decision here.

and the ongoing failure to remedy missed payments in light of its promise made. The fund relied on the promise while reasonably assuming the city was continually making payments. Here, however, assuming there was in fact a fifteen-day payment window, and even assuming that failure to pay after expiration of that window was wrongful, Servicios did not rely on JCAM's conduct to its detriment. Specifically, Servicios admits that it never expected JCAM, contractually, to pay within that window. Instead, under the theory it has argued thus far, it did not expect payment until it demanded it as early as 2004. Thus, the court has trouble seeing how Servicios would have detrimentally relied on JCAM's actions in failing to pay by the fifteenth day after any given invoice. Once Servicios became aware of the debt, and made JCAM similarly aware, any delay in bringing suit beyond the limitations period was not reasonable.

Nor does any of either JCAM's or JCI's conduct after the 2004 letter create a wrong sufficient to justify failure to bring suit. Servicios bases such an argument on the fact that JCAM and JCI allegedly acknowledged the debt at first, and then later decided not to pay it. But simply acknowledging the debt is not so unfair and misleading as to outweigh the public interest in the limitations period. After issuing its demand letter, it would be unreasonable to allow alleged debtors to give Servicios the run-around until well after the expiration of the limitations period. But this is not a case where JCAM or JCI falsely or misleadingly promised to pay but then unscrupulously delayed past the six-year window, stringing Servicios along the entire way. Servicios could at any time have initiated this action. In sum, the court finds

that Servicios is not entitled to equitable estoppel of JCI's asserted statute of limitations defense.

## II.   TORTIOUS INTERFERENCE

Next, JCI is entitled to summary judgment on the tortious interference claim. Tortious interference requires:  (1) a current or prospective contractual relationship with a third party; (2) the defendant interfere with the relationship; (3) intentional interference; (4) causation between interference and damages; and (5) a lack of justification or privilege. *Wolnak v. Cardiovascular & Thoracic Surgeons of Cent. Wis., S.C.*, 2005 WI App 217, ¶ 14, 287 Wis. 2d 560, 706 N.W.2d 667.  JCI argues that Servicios has pled itself out of the claim, has no evidence, and even if there is sufficient evidence, JCI holds a privilege defeating the claim.[6]

### A.   Pleadings

JCI first argues that a party cannot interfere with its own contract, *Wausau Med. Ctr., S.C. v. Asplund*, 514 N.W.2d 34, 44 (Wis. App. 1994), and that Servicios has alleged that JCI was a party to the contract.  Servicios does not address this argument in its briefing.  However, Servicios has pled tortious interference in the alternative to its contractual claims.  (Second Am. Compl. ¶ 139) (Docket #60). Parties may plead as many claims as they wish, regardless of consistency. Fed. R. Civ. P. 8(d)(3); Wis. Stat. § 802.02(5)(b).  JCI takes issue only with Servicios' allegations of a binding contract between Servicios and JCI in each separate

---

[6]Because the court determines there is not sufficient evidence, it does not address the argument regarding privilege.

contractual claim. Thus, the argument fails, as there is nothing improper about alleging a contract for some claims, and no contract in another. However, JCI's point regarding interference with one's own contract becomes very important as to the sufficiency of evidence.

### B.     Sufficiency of Evidence

JCI next argues that Servicios has failed to offer any evidence sufficient to advance its claim. Servicios has offered evidence that a contract existed between it and JCAM. As to the interference and intent elements, Servicios has put forth evidence that after it attempted to resolve the issue directly with JCI, it was referred back to JCAM where JCAM then told Servicios that it would not pay the alleged debt.

It is important to give slightly more detail on the facts concerning JCI and JCAM's alleged refusal to pay the debt. JCI is the ultimate parent of JCAM and sets corporate policy for JCAM. (Pl.'s SoF ¶ 5). Further, Johnson Controls Interiors, LLC, is a subsidiary of JCI and has some form of responsibility for JCAM plants in Mexico.[7] (*Id.* at ¶ 6). When JCI, after its discussions with the Chamber of Commerce, referred the matter back to JCAM, Servicios asserts that JCAM, possibly through its employees Muller and his successor Gabriel Sanchez, refused to pay the debt. The decision supposedly came "from the United States." (Rodriguez Dep. 51:9-15) (Ramirez Decl. Ex. B) (Docket #82-1).[8] Thus, usually, a reasonable jury

---

[7]The parties dispute some of the content of and inferences from this fact, (Def.'s Resp. to Pl.'s SoF ¶ 6), but the dispute is not material.

[8]The court notes that Servicios, in its Statement of Fact, supports a number of the factual assertions on this issue with citation to portions of depositions that it has not submitted. While the

-14-

might be able to infer that the decisions coming from the United States were in fact coming from JCI.

However, JCI raises an issue regarding the admissibility of the evidence establishing that the decision not to pay came from the United States. Under evidentiary rules, hearsay, an out-of-court statement offered to prove the truth of the matter asserted, is inadmissible. Fed. R. Evid. 801(c), 802. Hearsay is inadmissible for summary judgment purposes to the same extent it is inadmissible at trial. Fed. R. Civ. P. 56(c)(2); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).[9] However, an admission by a party-opponent is not considered hearsay. Fed. R. Evid. 801(d)(2). This includes statements made by agents or other parties authorized to speak on the subject. Fed. R. Evid. 801(d)(2)(C), (D). But, while the contents of the statement itself may be considered, they are not alone sufficient to establish the relationship or authority. Fed. R. Evid. 801(d)(2). JCI argues that Servicios' only evidence that the decision not to pay came from JCI is through testimony of Servicios employees relating what JCAM employees said to them. JCI then argues that Servicios has failed to offer any evidence sufficient to establish such a relationship.

JCI is ultimately correct that there is no sufficient evidence to show interference because the statements from JCAM employees are hearsay. To begin,

---

information provided is sufficient to allow the court to proceed in analyzing the issue, and while the information omitted would not change the outcome had it been included, it is not a sign of effective advocacy.

[9]With exception not relevant here. *See Eisenstadt*, 113 F.3d at 742.

outside of the offered statements that the decision not to pay Servicios came from the United States, it has not provided any other evidence sufficient to show interference. JCI's status simply as the parent company of JCAM does not give rise to a reasonable inference that JCI gave orders for JCAM to reject the alleged debt. The same holds true for the fact that JCI is the parent company of Johnson Controls Interiors, LLC, which allegedly has some responsibility for JCAM's Mexican plants. As JCI rightly points out, these facts are not evidence of conduct, nor do they give rise to an inference of such. Thus, Servicios' claim must rise or fall by the evidence purporting to directly establish that the decision not to pay came from the United States.

But the testimony of Servicios employees reiterating the statements of JCAM employees is hearsay unless other evidence establishes their agency or authority to speak on the subject. Servicios has offered no evidence sufficient to establish that the employees in question are directly agents of or otherwise authorized to speak on behalf of JCI. Instead, Servicios offers evidence that might establish JCAM itself as an agent of JCI, and that JCAM employees indicated the decision not to pay was coming from the United States. Thus, as employees and potential agents of JCAM,[10] it could be sufficient to establish that JCAM itself is an agent of or authorized to speak on the subject by JCI. Servicios attempts to do so; however, there arises a logical incompatibility. If JCAM is established as an agent of JCI,

---

[10] *See* Restatement (Third) of Agency § 1.01. It need not be resolved here whether the JCAM employees in fact had sufficient agency capacity.

sufficient to bind JCI in contract, then JCI is in fact a party to the oral contract at issue.[11] But, as noted earlier, if JCI is a party to the contract, a party cannot tortiously interfere with its own contract. Thus, on the evidence offered, Servicios is caught in a dilemma. Either JCAM is an agent of JCI and JCI is thus a party to the contract, destroying the tortious interference claim; or JCAM is not an agent of JCI, JCAM's employees have not been shown to be agents of JCI, and, therefore, their statements are inadmissible hearsay and there is no other evidence of interference, destroying the tortious interference claim. Accordingly, in either event, Servicios has not offered evidence sufficient to support a reasonable jury finding that JCI tortiously interfered with the contract at issue. JCI is, therefore, entitled to summary judgment on the issue.

Accordingly,

**IT IS ORDERED** that the defendant's Motion for Partial Summary Judgment (Docket #75) be and the same is hereby **GRANTED in part** and **DENIED in part**;

---

[11] Servicios has asserted that JCI is liable for breach of the contract under theories of joint venture, joint enterprise, apparent authority, and actual or implied agency. In each of these situations, if proven, JCAM and JCI would be agents of each other and JCI would be a principal to the contract. *Interior Woodwork Co. v. Prasser*, 84 N.W. 833, 835 (Wis. 1901) ("If a corporation or an individual so conduct their business . . . as to lead the public to believe that the agent possesses authority to contract in the name of the principal, they are bound"); *Wood v. Prussian Nat. Ins. Co.*, 75 N.W. 173, 174 (Wis. 1898) (requisite to "bind a person as principal" is the agent acting within scope of actual or apparent authority); *Custom Steel, Inc. v. John Wanta Builders, Inc.*, No. 2009AP526-FT, 2009 WL 4916532, ¶ 5 (Wis. App. Dec. 22, 2009) ("apparent authority binds a principal"); *Select Creations, Inc. v. Paliafito Am., Inc.*, 830 F. Supp. 1223, 1236 (E.D. Wis. 1993) ("apparent authority makes the principal a party to the contract"); *Edlebeck v. Hooten*, 121 N.W.2d 240, 243 (Wis. 1963) (joint venture requires agreement "to stand in the relation of agent as well as principal to the other co-adventurers"); *Spearing v. Bayfield Cnty.*, 394 N.W.2d 761, 765 (Wis. App. 1986) (parties engaged in joint enterprise each considered the agent of the other); *see also* 46 Am. Jur. 2d *Joint Ventures* §§ 2, 4, 16, 34 (2010); Restatement (Third) of Agency § 2.01 & cmt. b.

**IT IS FURTHER ORDERED** that **Count Sixteen** of the plaintiff's Second Amended Complaint (Docket #60) be and the same is hereby **DISMISSED**; and

**IT IS FURTHER ORDERED** that the plaintiff is not entitled to application of equitable estoppel in precluding the defendant from asserting a statute of limitations defense.

Dated at Milwaukee, Wisconsin, this 1st day of April, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge