# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

SERVICIOS ESPECIALES AL COMERCIO EXTERIOR,

      Plaintiff,

   v.                               Case No.  08-CV-1117

JOHNSON CONTROLS, INC.,

      Defendant.

---

# ORDER

On March 10, 2011, plaintiff Servicios Especiales Al Comercio Exterior ("Servicios") filed a Motion for Partial Summary Judgment (Docket #87). That motion requests that the court determine, with regard to the conduct at issue in this case, that defendant Johnson Controls, Inc. ("JCI") is legally a joint venture or joint enterprise with Johnson Controls Automotive Mexico S.A. de C.V. ("JCAM"), or that JCAM was an apparent agent of JCI. In its complaint, Servicios has offered a variety of theories ultimately looking to establish that JCI should be held liable for allegedly unpaid invoices issued by Servicios to JCAM. At bottom, Servicios alleges breach of contract, breach of duty of good faith and fair dealing, and unjust enrichment.[1] In order to hold JCI liable, Servicios has alleged variations of these claims that rely on establishing a joint venture, joint enterprise, and apparent agency. Thus, Servicios here seeks an order adjudicating the agency relationship between JCI and JCAM.

---

[1]Servicios also alleged tortious interference originally, but the court dismissed that cause of action in its April 1, 2011 Order.

However, for the reasons discussed below, the court finds summary judgment inappropriate and, therefore, the motion must be denied.

## BACKGROUND

The following facts are undisputed for purposes of this motion, except where noted. JCI is the ultimate parent of JCAM. (Pl.'s Statement of Facts [hereinafter Pl.'s SoF] ¶ 1) (Docket #90). From 2000 to 2009, JCI owned 100% of Johnson Controls Holding Company, Inc. ("JCHCI"). (Pl.'s SoF ¶¶ 12, 13); (Ramirez Decl. Ex. D, at JCISERV000494-519) (Docket #89-1). From 2000 to 2002, JCHCI owned 49.5% of Johnson Controls Holding Company Mexico, SRL de C.V. ("JCHCM"), which owned 75.26% of JCAM.[2] (Pl.'s SoF ¶ 12). In 2003, JCHCI owned 80% of Johnson Controls Investment Mexico, Inc. ("JCIM"), which owned 100% of JCHCM, which in turn owned 75.26% of JCAM. (Pl.'s SoF ¶ 13). In 2003, JCAM merged into Autoseat SA de CV ("Autoseat"). (Ramirez Decl. Ex. D, at JCISERV000498).

From 2004 to 2009, JCHCI owned 83.28% of JCIM, which owned 100% of Johnson Controls Mexico LLC ("JCM"), which owned 100% of Johnson Controls Automotriz Mexico, S. de R.L. de C.V. ("JC Automotriz").[3] (Ramirez Decl. Ex. D, at JCISERV000500-519). During these years, JC Automotriz owned 100% of Sistemas

---

[2]Servicios' statement of facts asserts the percentage ownership of JCAM was 75.25%, but the underlying documents cited show it was 75.26%. Ultimately, this apparent discrepancy is immaterial.

[3]Despite the possible tendency of a reader's eyes to glaze over in the face of all this alphabet soup, JC Automotriz becomes an important player with regard to this motion, so this name at least should be kept in mind.

Automotrice Summa SA de CV ("SAS"), which in turn owned 100% of Autoseat. (Ramirez Decl. Ex. D, at JCISERV000500-519). In a verified complaint filed by JCI and JC Automotriz in a Michigan state trial court, the two included an allegation that JC Automotriz is a joint venture. (Carlson Decl. Ex. F, ¶ 3) (Docket #27-2). In that complaint, referring to JC Automotriz, the parties employ the abbreviation "JCAM." (Carlson Decl. Ex. F, ¶ 3). That abbreviation does not refer to the JCAM at issue in this case. (Carlson Decl. Ex. F, ¶ 3); (Def.'s Statement of Facts [hereinafter Def.'s SoF] ¶ 8) (Docket #106).

JCAM operated as a manufacturer of automobile seats and interiors. (Def.'s SoF ¶ 4); (Pl.'s SoF ¶ 18). JCI also completes seat assemblies for automotive companies. (Pl.'s SoF ¶ 18). According to JCI, though it is or was the ultimate parent of JCAM, Autoseat, and JC Automotriz, it has never maintained day-to-day operational control over any of their activities, made day-to-day financial decisions for any of them, nor paid or otherwise funded day-to-day financial liabilities or obligations undertaken by them. (Def.'s SoF ¶ 13). Servicios disputes this assessment, but argues only that it contradicts an assertion in JCI's briefing that it held "total" control over JCAM. (Pl.'s Resp. to Def.'s SoF ¶ 13) (Docket #121).

Servicios also proposes a number of facts to establish that JCI and JCAM enter into joint supply agreements with other companies using shared purchase orders that make no distinction between the two companies. (Pl.'s SoF ¶¶ 19-21). However, as JCI points out, the underlying documents cited for these propositions

in fact refer to JC Automotriz, not JCAM. (Carlson Decl. Ex. F, ¶¶ 8, 12-14); (Carlson Decl. Ex. K, ¶ 75 & Ex. D therein) (Docket #27-3). As becomes clear later, it is immaterial whether these facts are accurate as regards JC Automotriz.

In communicating with JCAM employees, Servicios sometimes contacted them by email. (Pl.'s SoF ¶ 30). Those JCAM employees had "jci.com" as their email domain name. (Pl.'s SoF ¶ 30). Additionally, in its statement of facts, Servicios makes a series of other factual assertions intended to support a finding of JCAM's apparent authority to bind JCI. (Pl.'s SoF ¶¶ 2, 4-9, 26-27, 29-33). In response, JCI objects to a number of these proposed facts on hearsay grounds. However, because the court finds the issue of apparent authority is properly reserved for the fact-finder, regardless of the proposed facts, the court will spare a detailed account.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Id.* In other words, in determining whether a genuine issue of material fact exists, the court must construe all reasonable inferences in favor of the non-movant. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

## I.  PROPRIETY OF THE MOTION

As a starting point, JCI first argues that the relief requested by Servicios in the instant motion is not proper under the summary judgment rules and, thus, the court should deny the motion without regard for the merits. However, the court is not convinced that the Seventh Circuit has espoused as broad a rule as JCI suggests,

nor is it otherwise persuaded that such a rule is correct. The summary judgment rule states that "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a). However, the Seventh Circuit has held that summary judgment is not proper for a portion of a single claim. *Biggins v. Oltmer Iron Works*, 154 F.2d 214, 216 (7th Cir. 1946). In *Biggins*, the Seventh Circuit was faced with a motion to dismiss an appeal where the district court had awarded partial summary judgment to the plaintiff on a portion of the total damages claimed in the action. *Id.* at 215. The district court, accepting the evidence of $8,874.05 worth of damages (from a total claimed $13,308.80), entered judgment for that amount, plus interest. *Id.* at 215-16. The defendant sought to appeal the judgment, and the Seventh Circuit was confronted with the question of whether the judgment was final and thus appealable. *Id.* at 216. In analyzing the issue, the court rejected the defendant's argument that the judgment was final under Rule 54(b). *Id.* But in addressing the plaintiff's argument that it was not final because it was entered under Rule 56, the court determined that it must not only interpret Rule 56, but also determine whether the judgment was entered in conformity with the rule. *Id.* The court construed an older version of Rule 56, reading its provision for summary judgment in conjunction with the provision concerning cases not fully adjudicated on the motion. *Id.* In relevant part, then-subsection (a) provided that "[a] party seeking to recover upon

a claim . . . may . . . move . . . for a summary judgment in his favor upon all or any part thereof;" and then-subsection (d) provided,

> [i]f on motion under this rule judgment is not rendered upon the whole case or for all the relief asked . . . the court . . . shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. . . . [The court] shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just.

*Id.* at 216-17. The court held that the latter provision made clear that summary judgment was not permissible "for any portion of a claim less than the whole." *Id.* at 217. However, the court stated that the plaintiff in that case was in fact still entitled to an *order* fixing that portion of the claim not in dispute. *Id.* However, because the district court had erroneously entered judgment outside its authority, the court was still required to determine whether the judgment was final or interlocutory for purposes of appellate jurisdiction. *Id.* The court ultimately found it final and denied the motion to dismiss. *Id.* at 217-18. The Seventh Circuit later reaffirmed its position in a case where it held that entry of summary judgment was improper on only a portion of the full damages at issue in a single claim. *Commonwealth Ins. Co. of N.Y. v. O. Henry Tent & Awning Co.*, 266 F.2d 200, 201 (7th Cir. 1959).

As a result of *Biggins*, the Northern District of Illinois has drawn a rule that "piecemealing" and "issue-narrowing" are not permitted by Rule 56. *Arado v. Gen. Fire Extinguisher Corp.*, 626 F. Supp. 506, 509 (N.D. Ill. 1985); *see also Capitol*

*Records, Inc. v. Progress Record Distrib., Inc.*, 106 F.R.D. 25, 27-30 (N.D. Ill. 1985).

At the time those cases were decided, the language of Rule 56 was essentially the same, with the two provisions noted by the *Biggins* court still contained in subsections (a) and (d), respectively. Fed. R. Civ. P. 56(a), (d) (1985). The *Arado* court explained that the "issue-narrowing" function of Rule 56(d) "operates only in the wake of an unsuccessful (and proper) motion" under the rule. 626 F. Supp. at 509. As the Northern District of Illinois further explained in *Capitol Records*, the rule permits issue-narrowing adjudications. 106 F.R.D. at 29.[4] However, the *Capitol Records* court then concluded that Rule 56(d) did not permit a party to move only for a "factual adjudication," as might otherwise be available, if judgment as to the entire claim was not appropriate under Rule 56(a). *Id.* at 29-30. The court reasoned that the text of the provision allowing partial adjudication did not itself authorize a motion for such an order. *Id.* at 29. It further cited secondary sources stating that the partial adjudication provision was "ancillary to a motion for summary judgment." *Id.* Thus, the court held that the partial adjudication provision could not be employed independently of a proper summary judgment motion. *Id.*

The circumstances of both these cases shed further light on the issue JCI raises. In *Capitol Records*, the plaintiff sought a "partial summary judgment" as to roughly $9,000 of the approximately $14,000 claimed. *Id.* at 27-28. Thus, the court

_____

[4]This characterization appears in line with the Seventh Circuit's recognition that a movant may be entitled to an order fixing portions of a claim, but not a judgment as to less than an entire claim.

found the motion was improper per *Biggins*, and further could not be granted as a "factual adjudication" under then-subsection (d) without the motion being originally proper. *Id.* at 28-30. As such, though it was generally accepted that the debt of roughly $9,000 was not in dispute, the court declined to so order. *Id.* at 29-30. Similarly, in *Arado*, the plaintiff sought "partial summary judgment" as to the first count's prayers for compensatory, consequential, and liquidated damages, but not the requested actual damages. 626 F. Supp. at 508. The court there primarily cited to *Capitol Records* and agreed that then-subsection (d) did not permit an independent motion for factual adjudication. *Id.* at 508-09.

The court does not read these cases to foreclose a motion such as the one brought here, and further finds that the revised Rule 56 makes this position clear. *Biggins* itself holds only that an actual judgment may not be entered on a portion of claim.[5] It did not decide to what extent a court may otherwise adjudicate *legal* issues within a claim. The Northern District of Illinois cases speak only to barring consideration of motions for adjudicating pure questions of fact absent an otherwise proper summary judgment motion. Those cases simply refused to issue an independent order fixing the amount of damages not in dispute – a question of fact.

---

[5]In fact, its holding could be read as narrowly as to only foreclose judgment on a portion of damages. However, for the purpose at hand, the court assumes the broader reading as its decision would remain the same.

However, here are presented mixed questions of fact and law.[6]  Thus, the court disagrees that the cited cases speak directly to the issue at hand.

Additionally, the current version of Rule 56 supports allowing the instant motion to proceed.  The 1985 version of Rule 56 was simply entitled "Summary Judgment," with subsection (a) entitled "For Claimant." Fed. R. Civ. P. 56(a) (1985). Subsection (d) was entitled "Case Not Fully Adjudicated on Motion." Fed. R. Civ. P. 56(d) (1985).  However, Rule 56 was most recently revised on December 1, 2010, and subsection (a) is now entitled "Motion for Summary Judgment or Partial Summary Judgment." Fed. R. Civ. P. 56(a).  The previous subsection (d) now exists as subsection (g) and is entitled "Failing to Grant All the Requested Relief."  Fed. R. Civ. P. 56(g).

Subsection (a) now states explicitly that a party may move for summary judgment on a "part of [a] claim or defense." Fed. R. Civ. P. 56(a).  Moreover, the comments to the 2010 amendments, subdivision (a) state that the "first sentence is added to make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense." Fed. R. Civ. P. 56 advisory committee's note (2010 Amendments, Subdivision (a)).  This comment is also enlightening when read in comparison to the 1946 Amendment note for then-subsection (d), in force at the time of the Northern

---

[6] *E.g.*, *William B. Tanner Co. v. WIOO, Inc.*, 528 F.2d 262, 266 (3d Cir. 1975) (apparent authority to bind is mixed question of fact and law).

District of Illinois decisions, which states that the "partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case," citing, *inter alia*, *Biggins*. Fed. R. Civ. P. 56 advisory committee's note (1946 Amendment, Subdivision (d)).

These changes show that the current motion is proper. The title of subsection (a) now explicitly reflects "partial" summary judgment, as opposed to the prior version construed by the Northern District of Illinois. The amendment comments bolster this interpretation. Moreover, the 1946 comments recognized the existence of the "partial summary judgment" concept, tying it to the issue-narrowing adjudication discussed by the Northern District of Illinois. Thus, though the district's rule may have been proper at the time due to a lack of language allowing a party to move for partial judgment, the newly revised rules permit a party to move for partial summary judgment, a term the advisory committee itself understood to mean an issue-narrowing adjudication. In light of these changes, it would seem entirely at odds with the purpose of Rule 56 to disallow a movant from requesting partial summary judgment. Use of the word "judgment" itself may be an unfortunate continued use of an inaccurate term, but the intent of the rule is clear. *See also Isovolta Inc. v. ProTrans Int'l, Inc.*, No. 08-CV-1319, 2011 WL 221886, at *2 (S.D. Ind. Jan. 19, 2011) (finding *Arado* and similar cases no longer good law in light of Rule 56's 2010 revision, and holding motion for partial summary judgment permitted despite not being dispositive of any entire claim).

The Northern District of Illinois' rule may still be appropriate if a movant requests only an order declaring a lack of dispute as to a pure question of fact, but that is not the case here. Servicios has requested adjudication of a portion of its claims, namely legal issues related to agency elements. By the same token, the court finds it unnecessary to foreclose consideration of the motion where, under JCI's reading of the rule, Servicios could have simply requested summary judgment on the whole of each claim, knowing that it only sought a result as to the questions related to agency. Thus, the court concludes that Servicios' motion is not barred because it has requested disposition of legal issues that make up parts of various claims, as permitted by Rule 56.

## II.   SUBSTANCE OF THE SUMMARY JUDGMENT MOTION

Moving on to the substance, Servicios' motion asks the court to find that: JCI and JCAM were a joint venture; that the two were a joint enterprise; and that JCAM was the apparent agent of JCI. As detailed below, Servicios has failed to offer evidence showing entitlement to judgment on any of those issues and, thus, the court is obliged to deny its motion.

### A.   Joint Venture

Regarding joint venture, Servicios argues that JCI and JCAM admitted their relationship as a joint venture in a verified complaint. Alternatively, Servicios argues that the undisputed facts establish all the elements of a joint venture. Both avenues fail, as discussed below.

## 1.   Admission in Complaint

To begin, Servicios' argument regarding JCI and JCAM's supposed admission fails because the cited complaint involved a different company, not JCAM, and Servicios has not offered any law to persuade the court that full ownership of a subsidiary by a joint venture also makes the subsidiary a joint venture. Servicios cites to the complaint in a case brought by JCI in Michigan state court, wherein JCI states that it is a partial owner of "JCAM," which it further states is a joint venture. However, the abbreviation "JCAM" is used in that complaint to refer to JCI's co-plaintiff, Johnson Controls Automotriz Mexico S. de R.L. de C.V. ("JC Automotriz"). The JCAM at issue in this case is Johnson Controls Automotive Mexico S.A. de C.V. (the court has added emphasis here only for clarity). Thus, regardless of the effect of any such admission, it does not refer to the JCAM at issue in this case and, therefore, does not establish a joint venture between JCI and JCAM as a matter of law.

In its reply brief, Servicios suggests that, while the complaint at issue does not in fact refer to JCAM, it is nonetheless sufficient because JC Automotriz owned 100% of Sistemas Automotrice Summa S.A. de C.V., which in turn owned 100% of Autoseat, the company into which JCAM was merged.[7] As such, Servicios argues

---

[7]Because this argument is otherwise insufficient, the court does not address any issues regarding *when* the various companies owned each other with respect to when the alleged conduct occurred.

that JCI's admission that JC Automotriz is a joint venture "encompasses" JCAM.[8]

That argument implicitly asserts that any wholly-owned corporate subsidiary of a joint venture is itself legally considered a joint venture without further inquiry.  However, Servicios cites no law to support this proposition, and Wisconsin law suggests otherwise.  In *Spearing v. Bayfield Cnty.*, 394 N.W.2d 761 (Wis. App. 1986), the Court of Appeals of Wisconsin weighed the issue of whether the percentage of negligence of one corporation should be stacked with the negligence of its wholly-owned subsidiary.  394 N.W.2d at 763-65.  In *Spearing*, the front steering axle of a truck-crane driven by the plaintiff broke after passing over a bump.  *Id.* at 764.  The vehicle itself consisted of a crane made by National Iron Company, an unincorporated division of Pettibone Corporation,[9] and a chassis manufactured by Pettibone of Canada, a wholly-owned subsidiary of Pettibone Corporation.  *Id.* at 763-64.  The consolidated actions included a claim by Pettibone Corporation against various state officials and others for damage to the crane.  *Id.* at 764.  However, Pettibone Corporation was barred from recovering when the negligence of Pettibone of Canada was attributed to Pettibone Corporation, raising its level of negligence to more than any other defendant.  *Id.*  In affirming the decision, the appellate court

---

[8]Again, the court assumes, only for resolving this argument, that the Michigan complaint sufficiently establishes that JC Automotriz is a joint venture.

[9]As an unincorporated division, National Iron was not a separate legal entity, but was identified separately for consistency.  394 N.W.2d at 763 n.1.  Here, for clarity, the court will refer simply to Pettibone Corporation.

rejected application of the doctrine of "piercing the corporate veil," instead analyzing the attribution of negligence under the test for a joint enterprise. *Id.* at 765.[10]

While the court did ultimately find that Pettibone Corporation and Pettibone of Canada were engaged in a joint enterprise, it did so on the basis of the elements of the test and did *not* simply base its finding on the fact that Pettibone of Canada was Pettibone Corporation's wholly-owned subsidiary. *Id.* at 765. This suggests that determining whether a joint venture or joint enterprise exists remains a factual inquiry. Thus, the court is persuaded, at least at this stage and in light of a lack of any authority cited by Servicios, that even if JC Automotriz and JCI were engaged in a joint venture, that fact alone does not establish a joint venture (and according liability) with JCAM. In sum, the Michigan complaint does not admit a joint venture between JCI and JCAM, nor does the allegedly admitted joint venture with JC Automotriz establish a joint venture between JCI and JCAM.

### 2. Elements of Joint Venture

As to Servicios' argument that it has established the elements of a joint venture, the court finds that rendering summary judgment would be inappropriate. To prove a joint venture, a party must show: "(1) contribution of money or services by each of the parties; (2) joint proprietorship and mutual control over the subject matter of the venture; (3) an agreement to share profits; and (4) an express or

---

[10]As noted later, joint venture and joint enterprise are relatively interchangeable. *See infra* note 11. Thus, the *Spearing* court's application of the joint enterprise test does not lessen its applicability to the joint venture issue at hand.

implied contract establishing the relationship." *Ruppa v. Am. States Ins. Co.*, 284 N.W.2d 318, 325 (Wis. 1979).

Regarding the first element, Servicios attempts to establish contribution of money or services by citing to the Michigan lawsuit. However, as discussed above, that complaint is applicable only to JC Automotriz, not JCAM. In its reply brief, Servicios vaguely asserts that JCI and JCAM were in the "mutual business of manufacturing automobile seats and interiors," but this, even if supported by the undisputed facts, does not establish a contribution of money or services by both parties to the alleged joint venture. It establishes only that both companies produce seats. That sort of factual assertion would easily allow a reasonable jury to find for JCI that the two did not contribute money and services to the same production. Thus, Servicios has failed to show that the undisputed facts establish satisfaction of the first element.

As to the second element, mutual control, Servicios again cites to materials that in fact refer to JC Automotriz, not JCAM, pointing to the alleged joint supply agreements and shared purchase orders. Those materials cannot establish mutual control between JCAM and JCI. In its reply brief, Servicios argues mutual control because "JCI asserts that it did not have 'day-to-day operational control' over JCAM." It is unclear how this statement *supports* satisfying the mutual control element. Looking to the cited fact for the proposition does not help, as it is a denial by JCI that it ever made any day-to-day decisions for JCAM. (Def.'s SoF ¶ 13)

(Docket #106).  In responding to JCI's proposed facts, Servicios argues that the statement contradicts an assertion of "total control" over JCAM made in JCI's brief. Regardless of consistency, an argument in a brief is not a properly offered fact sufficient under the summary judgment rules.  Overall, Servicios' argument remains unclear.  Perhaps it intends an inference that because JCAM, rather than JCI, presumably had day-to-day control, and JCI had some other degree of control, there was "mutual" control.  But the argument is not developed and, in any event, a reasonable jury could find for JCI under the offered facts.  At bottom, Servicios has offered no facts to establish a genuine lack of dispute regarding joint proprietorship and mutual control over the alleged joint venture.  Thus, it has failed to establish the second element as well.

Moving on, Servicios asserts that the third element, agreement to share profits, is established by virtue of JCI's ultimate corporate ownership of JCAM. Because the court finds the other elements lacking, it declines to offer an opinion on this issue at this time.  It notes, however, that there is some doubt as to whether this position is correct.  Under a variety of normal circumstances, the existence of an agreement is discerned from the facts surrounding the parties' dealings.  But Servicios' argument essentially asks the court to hold that a corporate parent has an agreement to share profits with wholly-owned subsidiaries as a matter of law. Servicios cites no law to support this proposition.  Further, the underlying facts common to such a proposition would not seem to establish a *per se* agreement.

-17-

One-hundred percent ownership of a subsidiary means that the corporate parent owns all of the company's stock. Yet mere ownership of stock is not likely sufficient to establish an agreement to share profits, at least within the meaning of a joint venture. *Cf. Spearing*, 394 N.W.2d at 765 (undisputed community of pecuniary interest where parent and its subsidiary combined products to create a unitary product from which both presumably profited); *Crum & Forster, Inc. v. Monsanto Co.*, 887 S.W.2d 103, 144 (Tex. App. 1994) (finding that though parent corporation, through stock ownership, ultimately profited or lost in accordance with actions of subsidiary, no evidence of agreement to share profits in particular venture). Thus, because Servicios has already failed to establish that summary judgment is appropriate on the basis of any other element, the court will refrain from definitively foreclosing this argument without better briefing.

Finally, regarding the fourth element, Servicios's opening brief states that an express or implied contract exists because "it is apparent that JCI and JCAM were in business together due to their shared purchase orders with Tier 2 suppliers." (Pl.'s Br. in Supp. 8) (Docket #88). However, again, this statement is supported by citation referring to JC Automotriz, not JCAM, thus it is not sufficient despite any lack of dispute. In its reply brief, Servicios argues that there is at least an implied contract because JCI is JCAM's ultimate parent, retained control over JCAM, both companies are within the Johnson Control's family of companies, and both engage in manufacturing automobile seats and interiors. However, the implication of a

contract is a question of fact, not suitable for disposition on summary judgment. *See Garvey v. Buhler*, 430 N.W.2d 616, 619 (Wis. App. 1988) ("question of whether an implied contract exists is a question of fact"); *see also Theuerkauf v. Sutton*, 306 N.W.2d 651, 658 (Wis. 1981) ("ultimate and dispositive inquiry is that an implied in fact contract is not conclusively proved unless it is shown that the parties . . . came to a mutual agreement and this determination in turn depends upon an objective assessment of the parties' external expression of intention"); *Jolin v. Oster*, 198 N.W.2d 639, 644-46 (Wis. 1972) (question of parties' intent to form joint venture was for the jury). Thus, summary judgment is inappropriate as to this element.

Failure to show a lack of genuine dispute or entitlement to judgment as a matter of law regarding one element is sufficient to preclude summary judgment. Because the court finds that Servicios has either failed to offer sufficient evidence, or failed to show a lack of genuine dispute as to at least three of the four elements, summary judgment is not proper on the question of whether a joint venture existed.

**B.    Joint Enterprise**

For many of the same reasons earlier stated, Servicios also fails to establish entitlement to judgment that JCI and JCAM are a joint enterprise. Despite the fact

that joint venture and joint enterprise are fairly interchangeable,[11] Wisconsin courts describe the elements as follows:

> (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

*Spearing*, 394 N.W.2d at 765 (citing Restatement (Second) of Torts).  As to the first element, Servicios refers to the same evidence cited to establish a joint venture.  It cites this evidence generally, referring to the "connections" and "activity" between the two.  The argument appears to actually be either that because there is a joint venture, the first element of joint enterprise is satisfied; or that evidence supporting any of the joint venture elements is sufficient to satisfy the first joint enterprise element.  In either case, because the court finds the evidence offered insufficient to support summary judgment as to joint venture, it finds the same here.  Servicios additionally asserts that because everyone in the JCI family uses "jci.com" email addresses, this also establishes an agreement between JCI and JCAM.  However, a jury could reasonably find that use of the same email address does not establish an agreement.  Therefore, a genuine dispute remains, and Servicios has failed to

---

[11] *See Edlebeck v. Hooten*, 121 N.W.2d 240, 243 (Wis. 1963) (joint venture and joint enterprise have been used interchangeably); *cf.* 46 Am. Jur. 2d *Joint Ventures* § 4 (basic difference is that a business relationship is necessary for joint venture, not for joint enterprise; where "joint enterprise" used to describe business undertaking, often used interchangeably with "joint venture").

establish the existence of an agreement. For this reason alone, summary judgment is inappropriate on the issue of whether a joint enterprise exists.

However, neither has Servicios established entitlement to summary judgment with regard to the remaining three elements. As to the second, Servicios argues that because both JCI and JCAM manufacture automobile seats and interiors, the two share a common purpose. However, Servicios' proposed facts cite to the complaint referring to JC Automotriz, not JCAM. Further, the fact that JCI and JCAM, independently, both manufacture the same type of products does not undisputedly establish a common purpose *between the two*. This requirement is evident from the element's use of the phrase "to be carried out by the group," rather than simply "a common purpose." The fact that both JCI and JCAM manufacture seats and interiors is common in the general-usage sense that it is similar, but does not necessarily establish that it was common in the sense that it was the result of joint activity. Thus, a reasonable jury could find for JCI on this element given the proposed facts.

As to the third element, the community of pecuniary interest must be in the specific common purpose. 46 Am. Jur. 2d Joint Ventures § 4. As the Supreme Court of Texas noted, applying the Restatement (Second) of Torts' formulation of the elements,[12] it is not sufficient that two entities hold a common business interest or

_____

[12]As noted parenthetically above, the *Spearing* court took its formulation of the elements of a joint enterprise from the Restatement.

-21-

a common pecuniary interest. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 527-28 (Tex. 2002). Instead, there must be a community of interest in the specific purpose at issue, else the interests are "not held in 'community' . . . because they are not shared 'without special or distinguishing characteristics.'" *See id.* at 528 (explaining that a franchisor, wholesaler, or supplier is usually without a community of pecuniary interest in retail sales of the franchisee, retailer, or customer despite the position to benefit financially from successful downstream marketing of the product). Servicios again points to JCI's status as JCAM's ultimate parent, as well as its ownership interest in JCAM. But, for reasons similar to why the court doubts the existence of an agreement to share profits between a parent and wholly-owned subsidiary as a matter of law, that evidence is insufficient to establish a community of pecuniary interest. Servicios offers no proposed facts which go beyond showing a general shared business interest. Even if the fact that both JCI and JCAM manufacture automobile seats and interiors was a sufficient common purpose, the fact of JCI's status as the parent corporation does not show that the only reasonable inference a jury could draw is the existence of a community of pecuniary interest in that enterprise.[13] Stock ownership is simply too generic. Thus, a reasonable jury could find for JCI that there is no community of pecuniary interest on the basis of the

---

[13]This ambiguity itself appears repeatedly in Servicios' briefing. As JCI points out, it appears that Servicios may be taking the position that JCAM is itself the joint venture or enterprise, rather than the joint adventurer. While the court sees no need to resolve the motion today with a view toward one theory or the other, clarification will likely be needed at trial.

proposed facts. Servicios further points to facts supposedly establishing that JCI and JCAM enter contracts with each other, but the cited facts refer to JCI's and JC Automotriz's, not JCAM's, alleged joint supply agreements. Thus, Servicios has not sufficiently established the third element either.

Finally, as to an equal right to control, this element approximates the mutual control element of a joint venture. Servicios offers the same facts and arguments for this element as for the mutual control element of a joint venture. Thus, for the same reasons the court found the proposed facts for that element insufficient above, it so finds here. In total, for many of the same reasons that Servicios has not established that it is entitled to judgment as to the existence of a joint venture, neither is it entitled to judgment as to the existence of a joint enterprise.

### C.     Apparent Authority

Last, the court will also deny Servicios' motion as to apparent authority, as it is an issue of fact inappropriate for summary judgment. Apparent authority to bind another has three elements: (1) acts by the principal or agent justifying belief in the agency; (2) knowledge of those acts by the party sought to be bound; and (3) reasonable reliance by the party seeking to bind. *Iowa Nat'l Mut. Ins. Co. v. Backens*, 186 N.W.2d 196, 199-200 (Wis. 1971). However, as is otherwise clear from the obviously fact-intensive nature of the elements, Wisconsin and the Seventh Circuit recognize that the question is one ordinarily for the fact-finder. *Id.* at 200; *Pincus v. Pabst Brewing Co.*, 893 F.2d 1544, 1553 (7th Cir. 1990) (citing *Iowa*

*National*).  Servicios' briefing even makes this apparent, arguing in favor of its own interpretation of the facts.  Every argument made is in favor of an inference that should be drawn from the facts to establish each of the elements.  That is the job of the jury, not the court on summary judgment.  As such, the court will save paper and avoid explaining in unnecessary detail why a jury could reasonably find for JCI upon the cited facts, and instead rest on the proposition that apparent authority is a question for the fact finder.[14]  Thus, Servicios is not entitled to judgment on the question of apparent authority either.

## III.    JCI'S REQUEST FOR SUMMARY JUDGMENT

In addition to asking the court to deny Servicios' motion, JCI also asks for an entry of summary judgment on its own behalf.  Under Rule 56, "[a]fter giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant."  Fed. R. Civ. P. 56(f).  To begin, the language of the rule makes it clear that an entry of summary judgment for a nonmovant is discretionary.  Next, the court notes that the dispositive motion deadline in this case expired as of March 10,

---

[14]Servicios makes one passing argument that apparent authority may be determined as a matter of law, citing to *Iowa National.*  Servicios characterizes the decision as "concluding as a matter of law that, based on the undisputed facts, the first two elements of apparent agency were likely satisfied."  What the court actually concluded was that the trial court, *after a bench trial on the issue of apparent authority*, made a *finding supported by sufficient evidence* that no apparent authority existed on the basis of the facts presented. 186 N.W.2d at 199-200.  The Supreme Court of Wisconsin, reviewing "whether the findings which have been made are against the great weight and clear preponderance of all the evidence," determined that, while the trial court issued its decision without any delineated findings of fact and conclusions of law, the court would *presume* the facts established the first two elements and thus focused on the third, all the while weighing the sufficiency of the evidence. *Id.* at 200-02.  At no time did the court ever express that any facts were sufficient as a matter of law to support apparent authority.

2011. While JCI moved for summary judgment prior to the deadline, the arguments it raises now appear to be a mix of new arguments and re-hashed arguments from its first motion. In total, while it is within the court's discretion to grant summary judgment to a nonmovant, it appears that JCI is attempting to get a second bite at the apple through this request. The net effect will be to simply further delay this case which is rapidly approaching three years old. The wiser course is to put Servicios to its proof at trial. Given the expiration of the deadline and the substance of the arguments, the court declines to exercise its discretion.

Accordingly,

**IT IS ORDERED** that the plaintiff's Motion for Partial Summary Judgment (Docket #87) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 24th day of May, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge